THE PEOPLE *ex rel.* William H. Martin, County Collector, Appellee, *vs.* HERMAN HECHT, Appellant.

*Opinion filed October 28, 1925.*

1. TAXES—*party complaining of unfair assessment must show assessed value is unfair as to particular tract.* A party complaining of an unfair assessment cannot base his objection on a general showing that the average ratio of assessed value to actual or sales value of farm land is higher than the average ratio of assessed value to sales value of city lots, as the case is not to be determined as a question of averages but it must be shown that the assessment of the particular property is at a higher rate than other property.

2. SAME—*what must be shown to prove fraudulent assessment.* A tax-payer cannot be relieved from an assessment on the ground that it was fraudulently made at an excessive amount except upon clear proof that the amount of the assessment is excessive and that it was fraudulently made, and this cannot appear where neither the value of the particular property nor the amount of the assessment is shown.

APPEAL from the County Court of Madison county; the Hon. BARNEY OVERBECK, Judge, presiding.

HILES, NEWELL & BROWN, (DONALD KIRKPATRICK, of counsel,) for appellant.

OSCAR E. CARLSTROM, Attorney General, MONTGOMERY S. WINNING, EDWARD C. FITCH, and JOSEPH P. STREUBER, for appellee.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

The county collector of Madison county applied at the June term, 1924, of the county court for judgment and order of sale for taxes against delinquent lands, and Herman Hecht and 198 other owners of farms appeared and filed identical objections to judgment against their lands. The objections were six in number, but in substance all amounted to the single objection that the board of review had fraudulently discriminated in its assessment against farm lands and in favor of city lots. The objections applied to only one-third of the taxes assessed against the lands, each of the objectors having paid the other two-thirds, and it was stipulated between the State's attorney and all the objectors that the testimony offered on behalf of the objectors in the case against Herman Hecht should be considered and applied to the cases of all the other objectors so far as applicable, and that the objections to testimony and the rulings of the court on questions of law in the Hecht case should apply to the cases of all the objectors; that each of the tracts of land described in the objections was used exclusively for agricultural purposes; that the same proportionate amount of tax was objected to by each objector and the same principles of law were involved in the case of each objector. The case of Herman Hecht was heard, and at the February term, 1925, his objections were overruled and a judgment and order of sale were entered against his land, from which he appealed.

The year 1923 was the year of the quadrennial assessment of real estate. There are twenty-three townships in Madison county, and the assessment made by the local assessors in that year showed reductions in the total assessment of various amounts in most of the townships, though in some there was an increase of the assessment over that of the previous year. On July 27 the board of review adopted the following resolution:

"Whereas, it has come to the knowledge of the members of the board of review that the present condition of the farmers in this county is such that the valuation of their farm lands for taxation purposes should be re-assessed; and

"Whereas, the board has requested the county treasurer, William H. Martin, County Judge Wilbur A. Trares and State's attorney J. P. Streuber to meet with the board for the purpose of a conference, to relieve as much as possible the present oppression of the farmers; and

"Whereas, the board of review, after conference with the above named county officers regarding the financial condition of Madison county and advisability of reducing lands used for agricultural purposes, and after careful inquiry and investigation do find that lands used exclusively for agricultural purposes are assessed too high commensurate with the present prices of farm products; therefore,

"*Be it Resolved,* that all lands in Madison county used exclusively for agricultural purposes be and the same are hereby reduced 15 per cent from the assessable valuation as fixed for the year 1922."

After the passage of the resolution the reduction of 15 per cent was made. On September 12, on the complaint of the Illinois Agricultural Association against the board of review of Madison county, there was a hearing before the State Tax Commission on the question of ordering a re-assessment of all real estate in Madison county. Pearl Smith, the president of the board of review, testified on that hearing, as follows:

"We started in to review the books, make a comparison of 1922 with 1923, and we found that some of the assessors had made as great a reduction as 33⅓ per cent in their assessments. At Wood River, for instance, they made on

real estate a decrease of $51,985; Edwardsville $8540; Leef $270,000,—that is, the township that figures out 33⅓ per cent reduction from the 1923 assessment.

Mr. Watson: "Was that on land?

Mr. Smith: "That is just land values. But we found some townships that made an increase. Here is Shelby township, made an increase; Jarvis, Marine, Collinsville, Alton. After we got through comparing these, some of these assessors of the townships that made a very slight reduction and some that didn't make any came before the board and said, 'What are you going to do? If Leef township is given a 33⅓ per cent reduction—I haven't taken any reduction from the tax-payers in my township—if you are going to let that stand we want a reduction in our township accordingly.' Well, we got into a pretty bad mix-up on that, so the board visited each and every township in the county and looked at the property ourselves, and we were at a loss to know what to do. We wanted to treat the farmers fair, because the members of the board were familiar with the situation on the farms. They haven't raised any crops in the last year or two, and the crop they have been raising there is no market for it, hardly, and we felt we ought to do something to encourage the farmers and give them some relief if we could, because we find this year there are numbers of farmers that are giving up the farm; they are not going to farm next year; they are selling out their stuff simply because they are working day and night and they aren't making any money. So we thought if we could give them a reduction of 15 per cent it would be a great relief to them. So we talked this over with the members of the board, and we didn't want to have the responsibility on ourselves, and we called in the State's attorney, the county treasurer, the county judge and the chairman of the finance committee, and we went over this thing pretty carefully and figured out the valuations of our real estate in the county, and we decided we could give a 15 per cent

reduction and then meet our appropriations. The total decrease made by the assessors in the townships was $916,000. The increase made by the assessors in some of the townships was $174,000, so that made a net decrease of $741,000. The total land values for 1922 was $28,257,000. We figured a 15 per cent reduction from the 1922 valuation, disregarding the assessment made by the assessors for 1923, would mean a $4,238,000 valuation, and the value after a 15 per cent reduction would give us a valuation of $24,000,000."

Smith testified to the same effect on the hearing in the county court. The farm bureau of Madison county, acting on behalf of the objectors and the Illinois Agricultural Association, had collected and classified data from the records in Madison county showing the sales of farm lands and of city lots, and the actual purchase prices at such sales, for use in making comparison of the actual sales value of farm lands and city lots with the assessed value for taxation. The information was compiled on cards, each representing a separate sale, which were introduced in evidence on the hearing of the objections, and it is contended that the evidence showed that the average assessed value of lands after the reduction of 15 per cent had been made by the board of review was 48.11 per cent of the actual sales value of the land, while the average assessed value of city and village lots in the various cities and villages of the county was only 30.03 per cent of the actual sales value. There were 493 of the cards showing sales of city and village property and 41 showing sales of farm property. No rule was formally adopted by the board of review fixing a different rate for the valuation of farm lands and city lots, but the evidence justifies the conclusion that in the assessment actually made, the ratio of the assessed valuation of city and village lots to the actual value was substantially only about two-thirds of the ratio of the assessed value of lands devoted to agricultural purposes to their actual value.

The 15 per cent horizontal reduction did not affect all farm lands uniformly because it did not extend to improvements. The reduction was made only on the value of the land without regard to the improvements. No evidence was introduced on the hearing as to the amount of the assessment of the appellant's lands or their fair cash value. Therefore the ratio of the assessed value to the actual value does not appear, but his counsel assume that the appellant's farm lands were assessed 50 per cent more than they should have been in proportion to city and village lots, because it may be inferred from the evidence that the average assessment of city and village lots was only two-thirds as high, in proportion to their value, as the average assessment of farm lands. The case is not to be determined, however, as a question of averages but must be decided as a concrete case, referring to the particular land involved. The objection made is that this land was fraudulently assessed at a higher rate than other property, and this objection is not sustained by evidence that farm lands generally, or on the average, are assessed at a rate 50 per cent higher than other property. It must be shown that the assessment of this particular property is at a higher rate than other property. In fact, the assessment of the land was made, not by the exercise of its judgment by the board as to the present value of the land, but by the arbitrary deduction of 15 per cent from the assessment of the year before. That assessment was the quadrennial assessment of 1919 as it had been changed, if it had been changed, during the subsequent years. The 41 cards introduced in evidence by the objector to show the ratio of the assessed value of land used for agricultural purposes to the sales value showed that ratio to vary from 21.5 per cent to 73.8 per cent, thus indicating that the result reached by the method of assessment had no uniformity. The 493 cards introduced to show the ratio of assessed value to sales value of lots in the different muni-

cipalities shows a like want of uniformity, the variation of that ratio being between 21.3 and 78.1 per cent. It is apparent that the difference between the average ratio of assessed value to sales values in city lots and farm lands has no tendency to prove the ratio of assessed value to sale value in the case of any particular tract. That ratio may have been 21.5 or 73.3 per cent, or any per cent between. A tax-payer cannot be relieved from an assessment on the ground that it was fraudulently made at an excessive amount except upon clear proof that the amount of his assessment is excessive and that it was fraudulently made, and this can not appear where neither the value of the property nor the amount of the assessment appears.

The appellant contends that the resolution of the board ordering a 15 per cent horizontal reduction on the 1922 assessment had the effect of raising the assessment of a large number of farmers, among whom were some of the objectors, over the assessments as fixed by the town assessors for the quadrennial year of 1923. The board added to the reduced assessment of the farm lands the value of the improvements without any reduction and without regard to the action of the assessor, and the effect of this, it is said, was to raise the assessment of the appellant, as shown on the assessor's book for the year 1923, from $11,500 to $12,090 and the assessed value from $5750 to $6045. It is claimed that this was erroneous, but no objection was filed to the judgment for the excess because of the illegal raising of the assessment without notice, and since no objection was made there was no basis for granting any relief to the appellant on account of the change.

The judgment will be affirmed. *Judgment affirmed.*